Morning. We have three appeals that are scheduled for oral argument this morning. The first is the United States of America v. Nadya Diaz. Adam Hames is here for Appellate Diaz. Jessica French is here for the United States. And Mr. Hames, I see you are ready to proceed. May it please the court, my name is Adam Hames and I represent Nadya Diaz. The trial court, the district court below, abused its discretion in failing to give a jury instruction on Ms. Diaz's Second Amendment rights. That jury instruction was a correct statement of the law. It was not substantially covered by any other instruction given by the district court. And the failure to give that jury instruction was horrible error. The first point I would like to make is that prior to trial, the government sought to keep the Second Amendment out of this case involving possession of a firearm altogether by filing a motion in limine to exclude the defense from presenting any evidence about the Second Amendment or towards that as kind of a jury notification issue. As a result of that, there was very limited scope of what could be, and the judge granted that motion. And so there is, the evidence in the record is not what it could have been, but it is still sufficient in which to have given this requested jury instruction. What was in the, what specifically do you contend was in the proposed jury instruction that was not part of the charge that was given? So there are, when you have constitutionally protected actions and rights, and in this case, having the vast majority of the weapons, the vast majority of the firearms were contained in her home. And so Pruitt and Heller and McDonald, they all stand for the proposition that you have a fundamental right to possess firearms within your home. Well, whether she has a constitutional right, that's a legal question, correct? That's correct. And as I understand it, no one contested that she was legally in possession of her firearms. I can't say that entirely in that the implication from the government's argument was that she, well, it's not an implication. And so that there was a line in that, that whether she had, you know, she denied doing that. She denied knowing that Mr. Barr was a convicted felon. There's obviously evidence to the contrary, but based upon her testimony, she denied having any knowledge of his prohibited status. Can I ask you a question about that? Because I think that really hits on the issue. So, I mean, you've got some cases where the government could prosecute someone and, you know, literally all the evidence they have is that the person they're prosecuting for aiding and abetting lived in the same house as a felon. In this case, though, it seems like the government presented a lot of evidence beyond just living in the same house. And could you just address, I guess the question is, let's just assume that declining this kind of instruction could be a problem in a case, a different case. Why is it a problem in a case like this where there's evidence that, you know, she lived in that house with him for many years. He was carrying firearms around the property. She knew him when he was convicted of the felonies, things like that. She, to your last point, that sort of is definitely a contention. Right. Yeah, but that was the government's position, though. So, I guess that's my point. This isn't a case where, and I want to sort of say, like, I think maybe there's a situation out there where the government's prosecuting someone and the government's primary evidence is you lived in the house with this person. Is that this case? This is very close to this case. Okay, and why is that? The government is going to go beyond that. And had we not, had Bruin not come down, the government's position probably would have been a little bit stronger in that Heller and McDonald were based mostly upon the home. Bruin allowed for Second Amendment to be outside of the home. So, the difference in this case, and if you look at the other pattern instructions in aiding and abetting firearms possession of this court, it requires active participation by the defendant who is the aider and abetter. And in this case, that's where the evidence is clearly in dispute and clearly, for lack of a better way of putting it, that's what the jury had to make the determination about. And without knowing where to draw the line between what was her protected rights and what was protected actions and what was in violation of the law, the jury could not have made a reasonable decision. Yeah, but I mean, but you don't contend that, so I mean, the jury was instructed that, I mean, I think the instructions just track the statute. And the statute says that for aiding and abetting, you have to take an affirmative act in prevalence of the offense. And you have to have the intent of facilitating the offense. You don't contend that that's unconstitutional, right, that that offense is unconstitutional? That the... Yeah, the aiding and abetting statute. No. Well, then why isn't it enough just to give the instruction that says these are the things you have to find? Because when you have a fundamental constitutional right, this is a different... The government, in their brief, points towards the typical aiding and abetting, somebody who drives a car to a bank robbery. Obviously, that's... we're not talking about that. That's legal... that's a legal action that is taken by the individual in that scenario. In this scenario, the action is protected by the Second Amendment. And without the jury being instructed on what the... Well, but see, that's why I'm not sure I understand you, because you're saying the action is protected by the Second Amendment, but you just said that the crime, you're not saying that the statute, the commission of this crime is unconstitutional under the Second Amendment. So what action... what is the line that you're drawing between... I guess here's the question. How could someone be convicted of this crime of taking a affirmative step in furtherance of helping a felon have a firearm with the intent of facilitating the felon have the firearm? How can the Second Amendment have anything to do if you find that that is what someone did? I think the answer to that question, Your Honor, is that there are scenarios where, say, Ms. Diaz had, you know, the government had evidence that she handed the gun to him and said, hey, this is for you. Or it's something far more active, some other action than her legal possession of that firearm. Yeah, okay. All right. So I see that point, I guess. And then just to circle back, why is that this case? Because it seems like, I mean, I read the record of the case. It seems like consistently the government was arguing, look, her just having the gun was not the problem. She went to the gun store with the guy. She knew he was a felon. He had the guns, like, all around her property. They were his guns. That's what the government's position was, I think. Could you... One, was that the government's position? And two, if it was the government's position, why is this necessary? Well, I'll certainly let my friend from the U.S. Attorney's Office tell you exactly what the government's position is. But what I would say to you is that, yes, essentially that's the government's position. But we're coming to the court under a request for a jury instruction. And the request for a jury instruction has to take into all of the evidence and then allow the jury to make a determination. And what we have in this case is that Ms. Diaz took the stand and said that she didn't know he was a convicted felon, that she didn't know he was a prohibited person, that these were her weapons, that some weapons that he brought into the relationship were his that he had beforehand. That's where the... The problem for her, it seems to me, is that the government introduced evidence that Diaz purchased about 50 guns throughout her life. She filled out 4,473 forms about 35 times, which informed her that people who've been convicted of felonies cannot possess firearms. So it seems to me that the court could have granted the request to include that jury instruction. It seems to be a correct statement of the law. But how can we say that the court abused its discretion in failing to grant the instruction? Why wouldn't we apply harmless error review to the failure to give that jury instruction given this evidence? Well, in part because, Your Honor, that wasn't all that the evidence was there. There was also evidence, again, through Ms. Diaz's testimony... There was a lot of evidence that was introduced at the trial to suggest that she knew that felons couldn't possess firearms. Right. And I don't dispute what the government's evidence is. But again, we're looking at this on whether a requested jury instruction should be given. Ms. Diaz testified that she did not know that Mr. Barr was a prohibited person. And, in fact, that she saw him routinely walk around in public and around law enforcement officers. And so she made the assumption that he had his constitutional rights still intact. So with that being said, Your Honor, I think a harmless error analysis is a correct analysis in this ultimately. But I do think that that, and it is the Tekloff and the Nader case, is where the specific question is this. Does the record contain evidence that could rationally lead a jury to find the defendant, in this case, was exercising their Second Amendment rights? If so, the defendants are entitled to a new trial. Her lawyer was able to argue throughout the trial, though, that she had a right to possess firearms. And the district court then undercut that argument by specifically instructing the jury that nothing counsel says is evidence. So any arguments that were made, and remember, we also had the deal with the motion in limine that limited what he could say, were specifically undercut by the instructions to the jury. All right. Thank you, Mr. Hames. Ms. French, you may argue for the government. May it please the court, good morning. Jessica French on behalf of the United States. I'd like to start our discussion with the issues that Judge Brasher raised regarding where do we draw the line and how do we determine the difference between someone who is a law-abiding citizen with guns in their home who happens to cohabitate with someone who is a felon versus this defendant, Nadia Diaz, who was aiding and abetting and conspiring with the defendant to provide firearms. And if you are a responsible law-abiding citizen with a gun in the nightstand, you lack the mens rea, and that's the key issue here is the intent. What was Ms. Diaz's intent? And she was intending to break the law when she provided the firearms to Mr. Barr. Now, we do not have that danger in a case with a simple possession while cohabitating with a felon or someone else who is a prohibited person because that intent is lacking. The jury was instructed, you must know the unlawful purpose of the plan and willfully join in it. That is the element of conspiracy. If there is no plan, there is no unlawful purpose in which Ms. Diaz could have joined. You have to intend to have the gun yourself and intend for the cohabitant to share it with you or jointly possess it. And that's the key here is you have to have the intent to break the law. Now, the jury was instructed with the pattern instructions the law was being broken, both in conspiracy and aiding and abetting. So in conspiracy, the pattern charge was given that you must know the unlawful purpose of the plan and willfully join in it and that mere presence is not enough. For aiding and abetting, the court's pattern charge was given that finding a defendant as criminally responsible for the acts of another person requires proof that the defendant intentionally associated with or participated in the crime. In other words, you must find beyond a reasonable doubt that the defendant was a willful participant and not merely a knowing spectator. And that's what the jury was instructed here. And you see in the conduct in this case, as Wilson pointed out, that there was evidence of that intent. How do we see that? Well, we see that in Ms. Diaz, two key examples. Ms. Diaz is at the gun store with Mr. Barr. There was testimony from the gunsmith about the email where he's using a false name and talking about my gun. That is a gun that was purchased by Diaz. Following a purchase of another gun that was brought to the gunsmith, Diaz texts his son, look at my new gun, or he's saying it's my go-to pistol now. Second, another gun that was purchased by Diaz, the Wyndham weaponry rifle, was in a video with the defendant, Barr. He was shooting the gun, and Diaz can be heard talking in the background about that gun. Now, my colleague talked about how Ms. Diaz took the stand and what she said in her defense, and I want to bring that out as well because the defense was not impaired by the district court's declining of this instruction. And let's just be clear, no one is disputing that Ms. Diaz had the legal right to purchase the firearms and that she was legally able to own a firearm. That was not disputed by either party in the case. Indeed, that theme was woven not only in opening statement and closing statement, but also in cross-examination of government's witnesses. There were questions asked of those witnesses. Did Ms. Diaz buy this gun legally? Was this the legal way to purchase the gun? And those witnesses agreed. Now, Rahafe imposed that knowledge requirement, and Diaz's defense was a mistake of status defense, that she did not know that Mr. Barr was a felon when they co-possessed the guns. Now, she took the stand and swore to that, and the jury was free to reject her testimony, as they are when they are evaluating the credibility of any witness that takes the stand. And the government countered with the evidence of Diaz's multiple visits to Mr. Barr while he was in the Department of Corrections' custody, the packages and money she sent him, and the shared life that she had with him under an alias. Not his real name, Michael Barr, but alias Carlos Fonseca. Let me ask you a fact question about the record. Did the government emphasize at trial the number of guns that she owned? There was a discussion. I don't believe it was an emphasis at trial. There was a discussion of the number of guns that were present in the home. I believe it was nine guns were present in the home, and six of those were purchased by Diaz. I mean, because I can see the defense's concern that if there's an emphasis on the number of guns that she owned, although she owned them legally, that might lead the jury to infer that that possession was somehow something the jury should convict on. Well, whether it was one gun or multiple guns, if you're intending to share them with a felon, that's the crime here, right? The aiding and abetting the purpose or aiding and abetting the felon's possession of the gun. So having one gun and sharing it with another, yes, that might be different than multiple guns, but at the end of the day, that is a crime. You are sharing the gun with someone who is a prohibited person. Now, I'll also just note for the record that the district court's charge covered her jury instruction and that the instruction was not a substantively correct statement of law because they engrafted the additional act of aiding and abetting or the additional act beyond exercising her Second Amendment rights. I don't see that. Okay. This instruction is not a correct statement of the law? That is correct. What part of the instruction is not a correct statement? So we take issue with the fact that in order to find Ms. Diaz guilty of aiding and abetting Mr. Barr, you must find beyond a reasonable doubt that she committed some additional act beyond exercising her Second Amendment rights, and she committed that act for the purpose of aiding, assisting, encouraging, or facilitating Mr. Barr's legal possession. That's an incorrect statement of the law? Why is that an incorrect statement of the law? Because when she exercised her Second Amendment right by purchasing a firearm, she did not have to do any additional act. If she bought that gun with the intent to give it to Mr. Barr, the crime was complete. She bought the gun without any additional act, and that she had the intent to aid and abet his possession. Because you don't actually have to give under the statute. You don't actually have to give the gun to the felon. You just have to intend to give the gun to the felon, right? By your aiding and abetting, that's correct. You have to have an intent to join in the unlawful plan. That's correct. So if you took out that last sentence, everything else in the instruction is a correct statement of the law, right? It's a correct statement of the Second Amendment as it stands, but, again, that was not an issue in the case because that was a legal question that was not— Would there have been anything wrong with giving that instruction minus the last sentence of the instruction? Yes, because I think it would put a question of law before the jury, and if said— Well, her reason for it is because it provides context to her defense at trial. It provided context that I had a right to own, possess, purchase guns, and I didn't really know that his felon status prevented him from doing so. It provided context to that defense. And I think that there's two parts to this, right? So there's her defense, which was not, I'm able to own the gun. That was not her defense. Her defense was a mistake of status. She said, I own the gun legally. The government didn't refute that in any way. The government's own agents testified that she was able to own the guns legally. So it would have been nothing wrong with having this instruction provided to the jury that she's got a Second Amendment right to own the gun and possess it. It would have been nothing wrong to permit that. I said that it would be putting a legal question before the jury, and if Bruin and Heller and its progeny give us any guidance that a legal question, like whether or not the Second Amendment applies, it's a legal question that it requires a fact-intensive inquiry. What about this potential instruction? I mean, and this seems to be more what he was requesting, was something like Ms. Diaz's mere possession of a firearm in her home is not a sufficient basis to convict her of aiding and abetting or something like that. What about instruction? Just forget about the Second Amendment. I mean, couldn't a judge just say, yeah, mere possession, mere use of the gun herself is not sufficient to convict her? Yes, the judge could have said that, and the instructions that were given by the court were very similar in that vein. In aiding and abetting, the court instructed, so to prove the defendant's guilt under a theory of aiding and abetting in this case, the government must prove, one, that Mr. Barr committed the substantive offense alleged, that is, being a felon in possession, two, that the defendant committed an act which contributed to and furthered his commission of the offense, and three, that the defendant intended to aid in its commission. So it goes into that intent element that we keep going back to. I know I sound like a broken record, but it is the intent that's the key here, and the jury was instructed on intent. But that doesn't encompass the theory of the defense that mere possession of guns is not illegal, does it? No, but that was not the defense in this case. The defense was the mistake of status. The jury was not being asked whether or not it was illegal for Ms. Diaz to have guns. Nobody disputed that. Well, that was a theory of the defense, wasn't it? I mean, that was something that the defense reiterated at trial and brought out, wasn't it? That's correct. They did bring that up at trial. But her defense when she took the stand was that I did everything legally, I was living with this man who I thought was not a felon, and the jury rejected that testimony when they found that she was guilty of aiding and abetting. Right, so her defense wasn't I have all these guns for my personal use, and if he picked one up and used it, I didn't know about that. Right. So it wasn't a I have the guns legally, and I think as my colleague said in his briefing, I have the guns and Mr. Barr had the obligation to stay away from them, and that's the end of it. We're drawing a line. He had to stay away from the guns. That's not this case. This case was they had this shared life where they were owning and possessing firearms together, they were shooting guns on their property, and because of that, she thought that Mr. Barr was not a felon, and the government refuted that evidence with evidence of her visiting him multiple times while he was in prison, him using the alias and all the other things that have to do with that. So in a case, I mean, and I think so there's a Third Circuit case cited by your friend on the other side, and the Third Circuit suggested, look, there could be a problem in a case where the government suggested that just because someone lived with a felon and had guns in their house, that they had aided, abetted, or conspired to have the felon have firearms. You don't disagree that that could be a problem? I don't disagree, but again, the instruction clarified one is criminal and one is not, and you must have the intent to share in that enterprise. Yeah, and I guess I think what the Third Circuit is suggesting, and I mean, I think this is kind of a problem too, is the idea that one could infer based on living together with someone and having guns in your house that you did have the intent to help them have firearms, that you did, right? Just that the government might suggest in some case that you could draw an inference just from the fact that you're living with a felon, that you're conspiring with the felon. Right, but I... And that would be wrong, you would think, right? That would be wrong, and I submit that the jury instructions protect against that because you have to willfully join in the criminal enterprise to be charged with conspiracy, right? You must know of the unlawful purpose of the plan and willfully join in it. So the government would have to produce some evidence to show that they knew that that person was a prohibited person when they were possessing the guns with them. And here, that's just not the case. This is not a close call. So I will just reiterate that the court should affirm Ms. Diaz's conviction and sentence because the district court did not abuse its discretion here when it declined to give the instruction. The proposed instruction was an inaccurate statement of law and presented a question of law for the court to decide. Moreover, the requested instruction was already covered by other instructions, as we've discussed, and Ms. Diaz was amply able to present her defense. If the court has no other questions for me, I thank you for your time. All right. Thank you, counsel. Mr. Haynes, you've reserved some time for rebuttal. I think the point that I want to make again is that we're looking at this in a fundamentally different way. The case that Judge Brasher, you referred to in my briefing, is Hewitt, and Hewitt came to the Third Circuit in a fundamentally different procedural posture. It came because the district court in that case had dismissed prior to trial on a Rule 12 motion that it failed to state a claim. And actually, the holding in Hewitt is that that was incorrect as a matter of law. What we have is a very different set of circumstances. Hewitt is about factually as close as any case is. There really is a dearth of case law out there on this particular issue. But when you look at other cases where there's constitutionally protected behavior, we do give jury instructions. First Amendment, true threats, that's a jury instruction. Sixth Amendment, Fifth Amendment, those constitutionally protected behaviors are things that are instructed to the jury. Judge Pryor, there wasn't an emphasis on the amount of guns, but there was an emphasis on certainly the amount of ammunition. And there's just an undertone of, for lack of a better way of putting it, that these people may be separatists or have some kind of nefarious political goals. There's one other quote that I want to quote. It comes from Howard, but it was reiterated in Bruin, that a constitutional guarantee subject to future judges' assessments of its usefulness is no constitutional guarantee at all. And in this particular case, what Judge Brown in the district court did is he said Second Amendment doesn't apply, but it's a case about possession of firearms. And we would submit, Your Honors, that the charge was a correct statement of law, that it was not substantially covered by anything else than the jury instruction, and that the failure to give it was harmful as a matter of law. All right. Thank you, Mr. Hames. And I see that you were appointed by the court to represent Ms. Diaz, and the court thanks you for your service. All right. Thank you. Thank you.